Next case is Doyle v. Patel et al. for the Appellant, Mr. Hall, and for the Appellee, Mr. Hansel. You may present. May it please the Court, Hansel. The subject matter of this interlocutory appeal is whether Counts 6 and 7 of Doyle's amended third party complaint should have been dismissed Patel and Lehman's 2-6-1-5 motion. Both Counts 6 and 7 sought liquidated damages against Patel and Lehman individually for breach of the shareholders' agreement among the parties based upon the paragraph 7.1 providing liquidated damages in the agreement. In the judge's opinion dated March 16, 2011, the judge concluded that the amount of liquidated damages in paragraph 7.1 might be reasonable and also that at the time it was entered they were reasonable and that the actual damages were probably difficult or uncertain in amount and difficult to prove. So the judge concluded these two points. However, the judge went on to hold that the phrase, and in the paragraph it was typed wrong, injury parties, which means that the injured party's option, that paragraph 7.1 made the damages optional and because of other counts in the complaint, there were some for civil conspiracy and breach of fiduciary duties. The judge said they allege the same facts and seek damages as well and he did not believe a party could have liquidated damages and actual damages both. Doyle filed a motion for reconsideration and that was denied by order entered June 23, 2011. And the judge said, referring to his prior opinion, that he had inartfully stated the grounds for dismissal of counts 6 and 7. And he said, pursuant to the case of Catholic Charities v. Thorpe, a 2001st district case, the language at the injured party's option can only be read to preserve the alternative remedy of actual damages. And I respectfully submit to your honors that the judge's conclusion that the phrase in question, under the facts in this case and the language in the agreement, that the judge's conclusion that that preserved the remedy of actual damages is incorrect as a matter of law. Now before discussing Catholic Charities, I want to point out some of the principles of law enunciated in the recent 2011 case of Dallas v. Chicago Teachers Union. This case set forth requirements for valid enforceable liquidated damages. The parties must intend, first, to agree in advance to the settlement of damages that might arise from a breach of the agreement. Secondly, the amount of liquidated damages should be reasonable at the time of contracting bearing some relationship to the actual damages would be uncertain in amount and difficult to prove. The Dallas case went on to affirm the rule of law that there is no one fixed rule applicable to all liquid damages cases or agreements and each must be evaluated on its own facts and circumstances. A careful review of paragraph 7.1 leads us to the conclusion that it was the enforceable liquidated damages clause in this agreement. No other remedy for damages is provided for or discussed. And as the judge stated, the amount might be reasonable at the time of contracting and actual damages were probably uncertain in amount and difficult to prove. The parties could easily have added the words actual damages or some mechanism for actual damages if that had been their intent. How do you think the judge arrived at the conclusion that that amount might be reasonable at the time and damages might be difficult to prove? I think he arrived at that because of the other pleadings on file in the case and dealing with the fact that the practice involved medical malpractice cases and personal injury and a high volume of gross income in the firm and that when these younger partners came into the firm in 2007, this agreement was signed then, that it would be very difficult to know how fast they would mature and develop and work the cases or how many more cases the firm might be able to handle. But be certain that this wasn't a case where you just worked on an hourly basis and you could estimate hours. It was far greater than that. The sums were very substantial. Now turning to the Catholic Charities cases which the judge relied upon, I think it's critical to realize that this dealt with a real estate case. And all the real estate cases which are cited, Grossinger which my opponent has cited, Catholic Charities, they're a whole different purpose. In real estate cases, frequently it is maybe not easy, but one is able to prove with reasonable certainty what actual damages are. We all know the test for that. You know if the purchaser doesn't close, then the seller sells later and he looks at the benefit of his bargain. What did he lose? Did he gain or lose? And the whole idea behind strict construction on liquid damages in real estate cases is if you would allow a purchaser or seller to sit back and choose whichever was greater in a particular case, that totally negates the reason for liquidated damages. Liquidated damages are there when you can't determine actual damages, which is our case. So I don't think the holding in Catholic Charities, I think running with that word option, and the Catholic Charities Court referred to Grossinger which was also a real estate case, and in Charities it was the clause, the actual clause if you read it, was just talking about the benefit of the seller, not the parties in general who might be hurt. That's far different from having a shareholder's agreement executed by experienced attorneys taking into consideration different purposes. And I think that the judge really just truthfully found as a matter of law, based on the facts and the pleadings and what he had before it, that it would be very difficult to prove damages. Do you agree that if the contract gives the option of either pursuing actual damages or pursuing fixed damages, punitive damages, liquidated damages, that that's improper? Yes, I don't think you can have both. However, in this case I think we're entitled to plead other counts under alternative theories of pleading. One must remember we're at the very early pleading stage. We haven't even had depositions of the parties at this point. But the contract is interpreted as a matter of law. The contract does say option, and you are pursuing both options. Isn't that an indication that you have a contract here that provides for optional liquidated damages? I would disagree with that, Mr. Justice, for this reason. And I'd cite the Pierce case, Pierce v. VNC Electric, a 1982 First District case, which really stands for the proposition that inclusion of one word, in this case option, in the Pierce case the word was penal, or penalty, in a phrase at issue does not by itself create an unenforceable liquidated damages provision. In the Pierce case they were discussing liquidated damage clauses because in that case they had used the word penalize in a provision of a bargaining agreement. And in that agreement it required liquidated damages, only they called it penal, in the amount of 10% to be assessed on all late payments for deductions due in a labor contract. And the court held the use of one word did not constitute or convert the liquidated damage provision into an unenforceable penalty. And the court, it's significant, that's an important decision because the Pierce court also looked back and said it's long been the law in Illinois. And they cited, I found it interesting, McCullough v. Moore, a 1904 case, and said even though there the amount was labeled penal, you have to look at the whole substance of the agreement. What are we trying to do in contract interpretation? Understand the intent of the parties. The intent of the parties is paramount. And in Pierce they said the use of one word will not control in determining whether a sum named is to be considered as liquidated damages or an unenforceable penalty. Now, I'd like to talk about the case of Paramy, which I've cited in my brief. It's a pretty interesting case because the question there was whether reference, they had a liquidated damages provision, but the question was whether reference to actual damages to determine under that scheme or method the liquidated damages was fatal. And the court went on to hold that in that case the liquidated damages, no matter what actual damages might be if they could determine them, was fixed. It couldn't exceed that amount. So therefore they said if you have to go and look at potential actual damages to follow the formula for the liquidated damages, it's permissible because the party who's bringing the case isn't going to be able to sit back and choose and get a windfall. But once again I think it's important because in our case I believe most respectfully that the trial judge got confused about charities and the one word option and didn't look at the underlying reasons for that opinion and the policy behind that opinion. Now finally, the judge concluded that liquidated damages were unenforceable because the amount was not for a specific breach. And he cited the Med Plus case in Back to Paying Center. That's a 2002 district case, which is dealt with in both briefs pretty thoroughly. And in Med Plus, a former employer sued a former employee for breach of contract. Now in that case you had a chiropractor who hired an associate. He had him sign a two-year contract. And on the date the contract was signed, the employee had to sign a note, a promissory note for $50,000. And basically what it did was for each month he worked of those two years, the $50,000 was reduced 2,000 something a month proportionally. And the appellate court held that the provision at issue was clearly a penalty. And why? Because it did not bear any relationship at all to the employee's training costs, which was the big issue they were arguing for in that case. And the court said if he quit on day two, you have no training costs, but he'd have to pay $50,000. If he quit on the last day, you'd be all through the training. He'd incurred all those costs by the employer, and he'd owe the final installment of $2,000. So it didn't make any sense whatsoever. And they said that kind of case, that kind of clause, is considered a penalty. So the point I want to make is we can't just grasp one word out of the air and say this answers the question. In this case, how did the damages bear any relationship to actual damage, as to what happened? Well, since the case isn't fully developed yet, I have to tell you there'll be a little bit of speculation here, but not undue speculation. Because of the significant size of the gross income of this firm, if you look back through the shareholder's agreement, and if you look at the words in the provision, which so I'm precise, I'd say it says, any attempt by any party to avoid, in other words, prevent the occurrence or effectiveness of the agreement. For example, there's provisions for Doyle's retirement. There's provisions if he's kicked out of the firm. But in any event, we're talking about large sums of money. And going back to the earlier question, I think that's why the judge knew. There's no doubt that these could have been very reasonable damages decided by the parties. They might not even be adequate enough. In fact, I think what we're learning right now, that is the case. And I know I'm stuck with the facts of these two issues, but as the case develops, we have, it's admitted that Patella and Lehman are holding an escrow an amount, it's going to be well over $250,000 just of Doyle's 38%. And we have an argument whether he's entitled to the full 38% or if you have to do it on a quantum narrow basis. But the point is there are substantial dollars in this case. This isn't a trifling matter. So I don't think the judge was hung up on that at all. I do think the judge erred in concluding that under the importance of the Med Plus case first, because the facts are dissimilar. And second, plugging out of that case has to be for a specific amount for a specific breach. We do have that. The breaches are itemized in detail. And for each of those breaches, it's clear it's $250,000. So I think that was kind of an afterthought or a bootstrap matter. Now, continuing, back to the Dallas case versus Chicago Teachers Union. A couple of points that need to be made about that case that are very important. My opposing counsel has argued in his brief a Lake River case which dealt with commercial law. It was a Federal Seventh Circuit case. And it talked in terms about the breach and the damages. You know, if the gravity is less, you can't have a whole lot of money. The gravity has to be in proportion. First, that case is a federal case. It deals more with the commercial law issues about a possessory lien. And it really doesn't address the facts in our case. But I want to point out Dallas is quite interesting because there the plaintiffs sued to enforce a settlement agreement. The plaintiff was a former union officer who had sued the union and union members alleging that the union and its members had breached a confidentiality clause. And the settlement in the agreement, it said he was entitled to liquidated damages if there was a breach of $100,000 minimum. Now, the other side argued the $100,000 figure was a minimum rather than a fixed amount. Therefore, it couldn't be a liquidated damage. And it wasn't a specific amount for a specific breach. According to the defendants, there was no real attempt to fix damages at a reasonable and realistic sum. Well, I think the trial judge answered that question. Ours were realistic and they were reasonable. But the interesting point to me in Dallas is the court affirmed the trial court ruling in allowing the $100,000 in liquidated damages. Instead, we reject defendants' argument that the liquidated damage provision in paragraph 2.1 bears no relationship to the damages plaintiff might sustain and is therefore unenforceable. The amount as liquidated damage was reasonable at the time of contracting, which is the decision we have here, bearing some relation to the damages which might be sustained. The defendants also argued that if the liquidated damage provision in Dallas is enforceable, then it should have been thrown out because it only applies to statements about the plaintiff that were disparaging to him or held him in poor esteem. The court rejected that. The court said while the damage provision does include within its scope that there were disparaging remarks, it was not limited to that alone. The court stated it encompasses any written or oral statement concerning plaintiff or the settlement. Now, that's a recent case, 2011 case, on the 1st District. And I think it's important because it's kind of the offshore war eye argument. If that was permissible under those facts, certainly our facts show there was a valid enforceable liquidated damages agreement. Let me ask you a question that's sort of off the point here. Is it possible under this clause for both parties to collect liquidated damages from each other? It is. In fact, my opponent has a claim for liquidated damages in his pleadings, and we've denied that they could prevail on this. I mean, it's kind of ironic, it's kind of interesting, because you may think, well, why my arguments are this could come back to bite me? Well, it could. But I believe in my case and the facts, and that's just the way it is. That's the way it shapes out. But I would say this. I know my time's running short. In construing the intent of the parties, and I keep going back to that because that is the paramount thing, it is not reasonable, nor is it logical, that the parties intended to preserve actual damages in this case where they knew particularly well, being lawyers, and knew the kind of firm they had and what was at issue in this firm, that it would be extremely difficult to ever ascertain what actual damages were or prove them with reasonable certainty. This clause is really fuzzy. It seems to say, you do anything wrong, you'll cause liquidated damages. And that gets to my point. Heck, both sides could be paying liquidated damages to each other. That's true. I don't disagree with that. And they both agreed to that by contract. Doesn't the liquidated damages clause have to be specific? Doesn't it have to point out exactly what the wrong was that gives rise to the liquidated damages? Well, the contract says, the agreement says, what they can and can't do. And paragraph 7.1 specifically states, any attempt by any party to avoid or defeat those things, in essence, is a breach. That's pretty specific. Now, it's up to us to prove what parts were breached. We aren't at that stage yet. And I would also point out, as I get ready to summarize, under the facts of this case and the procedural stages we're in, even if the judge felt he was right, I would have thought he would have reserved ruling until the case had been developed and right for a summary judgment with more evidence, affidavits, and depositions. Thank you. We'll have additional time for rebuttal. Mr. Hansel? Thank you, Your Honors. This liquidated damages clause is rather unique. In all the cases, I've never seen anything like it. I think that it fails every single test that the cases have set up to determine the enforceability of the clause. And I will address those in my argument today. Before I do, I want to talk about one that was emphasized by my opponent, and that is that liquidated damages can only be upheld if they are a reasonable estimate of actual damages, and those actual damages would be difficult to prove. Well, here we have an argument, and I think an allegation, that the actual damages that are sought are for which breach of which clause. 7-1, the liquidated damages clause, doesn't address which of the other clauses in the contract might be applicable. In fact, it says any attempt to breach any provision, $250,000. Personal liability per shareholder. But let's pretend that it had said any attempt to avoid or breach the duty to pay him his 38% on departure. That isn't what the clause says, but I'll give it to you for the moment, that that is a particular breach that now they'd like to connect up to this clause. That's section 4.2 of the shareholder agreement. So here we have our actual damages for breach of section 4.2, failure to pay his 38% of settlement fees, difficult to prove. I think the question answers itself. When the settlements come in, the number is known. If you take 38% and multiply it by that number, you come out with a mathematical conclusion. There is no difficulty whatsoever in proving the actual damages for that breach. Now, I'm not conceding that that's what 7.1 was pointing to, because it didn't point to the duty to pay his 38%. It said you cannot attempt to breach any provision of this agreement. So, worse than that... Would you agree that would be a substantial breach if that occurred, and it would be the failure to pay the 38% on departure? The failure to pay the 38% on departure would be a clear breach, and it would be very easy to calculate the damages. So there's no purpose or need for liquidated damages in that case. That's just one of the tests, and we'd like to determine that. The irony here goes even further with this concept that it isn't difficult to prove. When they wrote the shareholder agreement and included this in 7.1 of liquidated damages, they wrote a formula in to the shareholder agreement about how to calculate 4.2, failure to pay a departing shareholder. The formula is written expressly in to the agreement. It is section 4.6. I don't know how there could be an argument made. It's going to be very difficult to prove the damages for failure to pay, even though a page earlier they wrote an exact formula for how to value it by an appraiser, how to consider the merits, how much time is expected, discounted for the time yet to be put in to the case. It's all laid out in black and white. It cannot be difficult to prove, even if they had used the formula and the process provided. That's why they put it in there, so there'd be no difficulty in proving it. Now to my argument on the optional clause. The trial court did in its final ruling disavow some of its reasoning in the earliest ruling. And when Judge Kinect asks, how do you suppose the trial court thought the amount could be reasonable, $250,000 each for Patel and Lehman, perhaps the court was thinking at the time of the fees and how they would be estimated and that it could be a big number. Perhaps the court was thinking of that at the time. But as I noted a moment ago, and as I will read this clause now, the failure to pay fees to a departing shareholder isn't mentioned in Section 7-1. So it's not as if they were thinking in drafting 7-1, any attempt to avoid payment of a departing shareholder's fees shall result in liquidated damages of. It doesn't say that here. It doesn't reference failure to pay a departing shareholder. It doesn't reference Section 4.2. Let's look at the language for one moment. Any attempt by any party to avoid, subvert, abviate, or delay enforcement, payment, or effect of the provisions herein shall result in personal liability of the shareholders to the injured party. I think that in looking at the clause in that section, there's a number of things that cause it to fail. The first is that it says any attempt to breach $250,000. And I do believe I heard my opponent in his argument say he could be seeking $250,000 for every single breach that he alleges in that count. I grant you that six of the breaches are fiduciary breaches. They're not breaches of the contract. He alleges several fiduciary breaches that he might want to say are attempts to avoid the contract breaches. $250,000 for each attempt. And by the way, if the attempt fails, if you read Section 71, it doesn't matter if the attempt failed. There was an attempt to avoid. You owe $250,000 for that attempt. If the attempt succeeds, it's not really clear here. Perhaps you owe $250,000 for the attempt at avoiding, and then you owe whatever the actual damages are for the breach, which would be a double recovery. Or perhaps the intent, if I read the pleading, and it's a difficult one to discern, is if you attempt and succeed in breaching, it's $250,000 in lieu of whatever the actual damages are. You could breach this section over here, which is a little one like you promised to pay us for the yellow pages, $250,000. Is it your argument that the liquidated damages provision in 7.1 is void? Absolutely. The contract your people drew, the language your people put in the contract, is meaningless. I believe it's unenforceable. It should be unenforceable, and the cases are very clear as to the fact that it's unenforceable and why. Isn't it sort of inconsistent to argue that a clause that your people put in the contract means nothing? Well, I think it's ironic. I recognize that these are lawyers, although one of them is a criminal lawyer who knows nothing of commercial law. The other is a PI lawyer who knows nothing of commercial law. But let's assume that they actually intended and understood that this clause was a threat to secure performance, and it was a $250,000 threat both ways. The cases are clear that that is unenforceable as a matter of public policy. If they had written in there that if you attempt to avoid or breach, you will succumb to ten whips on your back, you understand what ten whips are, you agree you will, would it be enforceable? Of course not. Why isn't a penalty enforceable if the parties agree knowingly to that penalty? Why isn't a threat to secure performance enforceable as a matter of law in Illinois? That's a matter of public policy, but I think I know the answer. And if that's your Honor's question, I would answer it in this way. Contract law provides compensation to the injured party for the actual damages that they sustained by reason of the breach. It does not provide or allow punitive damages because somebody breaches a contract. In fact, it goes so far as to say that a party is free to breach a contract knowingly, intentionally, and still have no more exposure than whatever the damages were to put the injured back in the position they would have been in. Consistent with these principles is why a liquidated damages clause is not going to be enforced if it is just a penalty or a threat to secure enforcement. If the word option had been left out of 7.1, would it be a valid liquidated damages clause? No, sir. I think that the word option by itself is the end of the story here and dispositive because the word option, as Catholic Charities recognize, can only be interpreted to mean that you don't have to pursue liquidated damages. Well, what other damages are there? Well, maybe you didn't have to pursue any damages. You had the option of not pursuing any damages at all. Right, and what Catholic Charities pointed out, well put, is it's a given in the law that you never have to pursue damages. There's nothing that says you ever have to pursue any kind. So when it says that the option of, it has to be interpreted to mean something else. And the only other else is, if you don't pursue the liquidated, you can pursue actual. Actual is another given that doesn't have to be referenced. It's like saying now, if I breach this contract, it's your option whether you want to sue me or not. Do those words have any literal effect or substantive meaning? They do not. Well, sometimes people put language in the contracts that just restates the obvious, but so what? Well, it can be interpreted in one stage as to restate the obvious, and as my opponent concedes, it really is surplusage. He said it in his brief, he said it's just surplusage. It's really not necessary. Or you can interpret it to have a meaning. As the First District says, between interpreting it to be meaningless or have a meaning, the law says the right interpretation is to give it a meaning. And the only meaning that can be given is, you don't have to pursue these, you can pursue the other. So I only can defer to the First District and Catholic Charities as to how to interpret that language. Now, I said a moment ago that I believe that the clause fails every test. The trial court did ultimately rule that the option language consistent with Catholic Charities was dispositive. Although the trial court also made note that another fatal flaw was that the number, the amount, $250,000, was not connected to any specific breach. Which breach is this an estimate of damages for? If it's not connected to a specific breach, if it doesn't say, this is the amount that we would serve as damages for this misconduct, it's void. Why? How can it be a reasonable estimate if we don't even know which misconduct it's intended to apply to? All of these are why the cases lay out these various tests to determine whether or not they ought to enforce these clauses. And the cases note that the courts have a distrust of these clauses, they would like to keep the remedies within the scope of the principles of contract law, as I mentioned what they were a moment ago, no punitive elements in contract law. So in this clause, imagine when it says any attempt, imagine a failed attempt, no actual damage, $250,000. I don't think that this clause can be read in any way other than as a threat to secure performance. I don't think reading its words you need to look behind those words to understand what it was intended to do. It was intended to discourage any party from doing anything to avoid, subvert, abviate or delay enforcement or effect of the provisions of this shareholder agreement. For all of those reasons, for the reasons stated by the trial court in its ultimate ruling, and reasons that may not have been included there but are clear in the cases, and itemized in our brief, this clause is a threat to secure performance, it has no reasonable relationship to any particular breach, and for that reason it should not be enforced. And the parties should be left to their real substantive remedies, actual damages. You know, counsel has mentioned the money is in a bank account. The 38% is a mathematical calculation. If that's what he wants, it is easily proved if he can demonstrate a breach. Perhaps he wants more. He has yet to say this. Does he want the money in that bank account and $250,000 from Mr. Patel and $250,000 from Mr. Layman? I hope not. I assume not. But under the language of this clause, he could make that argument if the courts chose to enforce it. Thank you, counsel. Mr. Hall, rebuttal. Again, may it please the court, counsel, I hate to admit it's been a few years since I've left law school. I'd like to think it was sooner in time. But I would say this. If I were writing an exam and discussing the issue of liquidated damages, and I had before me the Dallas versus Chicago Teachers Union case involving a settlement agreement, that type of contract, and I had before me a line of cases all dealing with real estate matters, understanding not the first step, but the second and third and fourth step of reasoning why those are different and why the courts differ, and I cited the real estate cases and plucked one word out of the air to defeat this argument, I would have flunked no matter which of my professors I had. And I don't mean any disrespect to the trial judge, but we're supposed to be about justice. And it's not justice to say, well, you haven't shown me what particular breach is tied into this particular damage, and I'm going to not let you plead, take depositions, and try and prove these counts up, even though we're entitled to alternative theories and remedies in the pretrial process. That's not fair. That's just not right. If we can't do the job, then later down the line, throw it out if we haven't made the case. I know this is a matter of law, but you have to have certain essential basic facts to make the legal conclusion and apply the law to this clause. Also... You made the choice to take the immediate appeal. You could have left the case in the trial court, and perhaps the trial court could have changed his mind later on. Well, Your Honor, I don't think he would have changed his mind. We argued pretty long and hard both times at the original motion and at the re-hearing. And also, you have to remember that these counts are against Patel and Lehman individually. The other counts are against their corporation. Two vastly different propositions, which bring in different issues and different elements of proof and different matters available in discovery. Is it your position you can get multiple awards of liquidated damages? No. It's my position that if I prove a breach, I get $250,000. That's it. If he proves a breach, I darn well tell you we're not going to agree to more than $250,000, and we'll be right back here if the judge gives him more than $250,000. So even if they committed several breaches, the limit that you can get is $250,000? Yes. Yes. There's no other sensible reason to put on that. And once again, the parties wouldn't have attended it any other way. This talk about we don't know how far it can go, that's kind of a red herring to divert the attention from the real issue. The real issue is simple. This isn't complicated. The parties, what did they intend? They knew they couldn't prove with certainty, with reasonable certainty, actual damages. So they fixed liquidated damages. The amount under these facts with this type of law firm and this type of business, we're not dealing with 40 hours a week, we're dealing with large settlements, large trial breaks, was reasonable at the time they contracted in 07. There was no way to know four or five years later what might be the case. And also I want to point out quickly, some facts have been brought in that are germane actually to these narrow issues on the interlocutory appeal, but the formula wasn't used. Patel and Lehman didn't use the appraiser. They opted out of that. So that's, once again, convoluted insight. I don't think it really goes to the issue or the rightness or wrongness of this decision. But for these reasons, to bring about justice in this case, we need an opportunity to plead those counts against those individuals. Well, if that formula is available and it's in the agreement, isn't that part of the context of what the liquidated damages clause means? I don't think it is, Mr. Justice, because that's talking about things as if he had, say he made, my clients added, made a contribution to the firm for costs in an expensive Med-Mal case. They need $50,000 to pay for doctors' opinions and depositions. That formula would cover when he gets that back and how he gets that back. That doesn't cover the proceeds from a case or if there's a million-dollar case out there or two million-dollar case. The failure to reimburse, to advance those fees, would be a breach. Yes, and I would also... Would a breach, what, the liquidated damages clause would not apply because that would be easy to prove? No, it would. I thought about that and I expected that question. It is an excellent question. I think the answer probably isn't known until we get down right at trial time and we have to fish or cut bait on our theories and counts and decide what we're going to trial on because we can't have a cumulative remedy. We can't have a double remedy, and we wouldn't argue for that. So you're, in another way, your real argument... No, not your real argument. An argument you're really making... There's that word, real. An argument is this is just premature. Absolutely. Mr. Ansell might be right, but if he is, let's wait and find out. I hate to admit that he's right on anything, but it's possible the judge might be right at the end but not at this stage, not at this juncture. It just distorts the process, and that's why we're here. We're asking for your help and a correct decision. Thank you, Your Honors. Thank you. The case will be taken under advisement. We'll stay at the recess until further call.